**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | MDL No. 3044 |

**REPLY IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO
THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 USC §1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs Patricia Bindel, Alexander and Rona Berger, Cynthia and Brian Camp, Emanuel Cervelli, Lawrence Daly, Jeffrey and Diane Fassler, Nue and Trashe Gega, Mark Goldman, Herbert Hahn, Michael Head, Michael and Debbie Insdorf, Leslie and Arcangelo Liberatore, Dawn and David Zeevalk hereby reply to Defendants Exactech, Inc. and Exactech U.S., Inc. (collectively, the "Exactech Defendants") Response to Plaintiffs' Motion For Transfer to the Eastern District of New York pursuant to 28 U.S.C. § 1407 and Rule 6.2.

As the Exactech Defendants are in agreement that cases involving the Optetrak, Truliant, Vantage and Connexion GXL Liner devices should be transferred for coordination and consolidation of pretrial proceedings pursuant to section 1407 (Dkt. 42, Response at 1), Plaintiffs' reply is limited to addressing Defendants' venue proposals and their general statements minimizing the gravity of the recall. As detailed below, centralization in the Eastern District of Louisiana would not promote the just and efficient conduct of the litigation. Instead, as explained below, these cases should be consolidated before Judge Kiyo A. Matsumoto in the Eastern District of New York. In the alternative, Plaintiffs believe Judge Nitza I. Quiñones Alejandro in the Eastern

District of Pennsylvania, would be a sound alternative. Should the Panel be considering transfer of this action to the Southern District of New York, Plaintiffs request consideration of transfer of these actions to Judge Lorna Gail Tiangco Schofield as addressed below.

## I. INTRODUCTION

Although the Exactech Defendants attempt to minimize the magnitude and significance of their recalls, it is important to note that the recall of the Optetrak and Truliant devices encompasses over 145,000 devices implanted over a period of eighteen years[1] and almost 90,000 Connexion GXL liners implanted over a period of thirteen years. Dkt. 1-1, Memorandum in Support of Motion at 8-9. While Defendants claim they did not discover the polyethene inserts had not been packaged properly until July 2021, Defendants fail to acknowledge the years' worth of international registry data available to them demonstrating exceptionally high rates of failure of the Optetrak device. For example, according to the 2016 Australian Joint Registry "One prosthesis, the Optetrak PS, has a high cumulative percent revision of 22.0% at 10 years."[2] As a result of Defendants' conduct, Plaintiffs have and will endure years of pain and difficult recoveries from premature failures requiring revision surgeries, notwithstanding the claims of Defendants that their implants would last a lifetime.[3] The merits of this important litigation will be addressed before the transferee court.

---

[1] *See* Exactech, Inc., Urgent Medical Device Correction, EXACTECH, INC. (Apr. 7, 2022) https://www.exac.com/wp-content/uploads/2022/04/Exactech-DHCP-letter.4.6.2022.pdf.

[2] Australian Orthopedic Association, National Joint Replacement Registry- Hip, Knee & Shoulder Arthroplasty, 2016 Annual Report *available at* https://aoanjrr.sahmri.com/documents/10180/275066/Hip%2C%20Knee%20%26%20Shoulder%20Arthroplasty

[3] Exactech, Inc. *Assessing the Long-Term Clinical Performance of Connexion GXL Polyethylene Acetabular Liners in Total Hip Arthroplasty*, EXACTECH, INC. (2017) https://content.exac.com/wp-content/uploads/sites/3/2018/09/046H_GXL_White_Paper_Web.pdf.

### II. COORDINATION IN THE EASTERN DISTRICT OF NEW YORK IS APPROPRIATE

While the Exactech Defendants propose that either the Eastern District of Louisiana or the Southern District of New York are better suited for consolidation and coordination of the Exactech Polyethylene Orthopedic Products MDL, they fail to make any compelling argument as to why either of these venues are more appropriate than the Eastern District of New York nor do they have any argument to suggest that the Eastern District would not be an appropriate venue.

Defendants intimate that because plaintiffs have filed a preponderance of the cases in the Eastern District of New York there is some gamesmanship to "steer" the litigation to the venue of their choosing. The reality is that New York is the ground zero of where Exactech joints were implanted because of the Hospital For Special Surgery's (HSS) frequent use of the devices and the vast number of surgeries performed at the this exclusively orthopedic hospital. While overall use data is not available since there has been no discovery, the existence of medical articles by HSS surgeons highlighting problems with the Exactech hips and knees reflects the abundance of implantations in New York. Many New Yorkers reside within the E.D.N.Y. large boundaries.

In 2020, surgeons at HSS published a paper entitled "Early Failure of a Modern Moderately Cross-linked Polyethylene Acetabular Liner" in Arthroplasty Today[4] indicating that "[t]he senior author performed 204 primary total hip arthroplasty procedures over a 2-year period using the Exactech Connexion GXL liner. Among this cohort, we identified 5 cases of severe polyethylene wear and osteolysis which occurred within 5 years of the index surgery."[5] Similarly, HSS published a paper in 2019 entitled "Comparison of patient-reported outcomes based on

---

[4] Cynthia A. Kahlenberg et al, *Early Failure of a Modern Moderately Cross-Linked Polyethylene Acetabular Liner*, 6 Arthroplasty Today 224 (2020).

[5] Notably the paper concludes "[t]his review of 5 cases of catastrophic early polyethylene wear demonstrates a concerning trend with the use of the Exactech Connexion GXL liner."

implant brand in total knee arthroplasty a prospective cohort study" published in the Bone & Joint Journal.[6] The study used the HSS institutional registry and identified during the time frame 4135 patients who underwent Total Knee Arthroplasty using one of the five most common brands of implant. These included Biomet Vanguard in 211 patients, DePuy/Johnson & Johnson Sigma in 222 patients, **Exactech Optetrak Logic** in 1508 patients, Smith & Nephew Genesis II in 1415 patients, and Zimmer NexGen in 779 patients. Clearly HSS implanted more Optetrak knees than any of the competitor brands during the study period and New York is the center of gravity for this litigation.[7]

### III. THE EASTERN DISTRICT OF LOUISIANA WOULD NOT SERVE THE CONVENIENCE OF THE PARTIES OR PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE LITIGATION.

#### A. There is Little to No Nexus Between the Eastern District of Louisiana and this Litigation

Defendants argue the Eastern District of Louisiana would be an appropriate venue because Judge Sarah S. Vance has one Exactech case. Dkt. 42, Response at 14-15. Defendants advocate that District because there is a single pending case (*Billiups*), yet, Defendants notably fail to disclose they filed a Motion to Dismiss in that very case on statute of limitations (or in Louisiana parlance "prescription") grounds. They argued that "Plaintiff's claims should be dismissed because the Complaint shows that the action is barred and there are no reasons for tolling the statutory period." *Billups v. Exactech, Inc.*, No. 2:22-cv-01410-SSV-MBN, Dkt.14-1, Motion at 5. The Motion is fully submitted as of today, July 27, 2022, and the matter could be dismissed even prior

---

[6] Cynthia A. Kahlenberg et al, *Comparison of patient-reported outcomes based on implant brand in total knee arthroplasty*, Bone Joint J 2019;101-B(7 Supple C):48–54
[7] The study found "on a multivariate regression model… Optetrak Logic patients were the least likely to be satisfied (OR 0.60; $p < 0.001$)."

to the hearing before the Panel. If Exactech wins this dispositive motion, then there would be no other pending case in that District.

Given the number of actions already pending elsewhere, it is clear the vast majority of these actions did not arise in the Eastern District of Louisiana and that E.D.LA is an outlier. This Panel often looks for the "center of gravity" of the litigation. *In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359 (J.P.M.L. 2020). Here, that center is in the Eastern District of New York, where fifteen (15) cases are pending, and thirteen (13) have been assigned to Judge Matsumoto.

### B.  Eastern District of Louisiana is Deluged with Many MDL Cases

The Eastern District of Louisiana remains an active and busy jurisdiction with five (5) open MDLs, with a total of active 17,200 cases pending.[8] In contrast, the E.D.N.Y. only has ninety-seven (97) cases pending among the five (5) waning MDLs.

### C.  The Eastern District of Louisiana is Less Convenient to Parties and Counsel than the Eastern District of New York

Defendants suggest that New Orleans is convenient to Gainesville, Florida where Exactech is based, however, Google Maps reflects it is 533 miles and a seven hour and 42-minute car ride. Gainesville is a small airport with very few flight options. Simple searches on Delta, American Airlines and Expedia websites reveal there are no direct flights, and most layovers exceed two hours for a travel time in excess of four hours. In fact, the time to get from Gainesville to John F. Kennedy or LaGuardia airports is comparable to the time from Gainesville to New Orleans and there are more flight options as flights in and out of the Louis Armstrong New Orleans Airport are

---

[8] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-Jul-15-2022.pdf, at 2.

also quite limited. With New York, the parties will have the option to fly in and out of multiple major airports of which two are within the E.D.N.Y.

### D. The Eastern District of Louisiana Will Be Handicapped by a Small Bellwether Trial Pool

The trial court would be hindered in its bellwether trial process should the Defendants refuse to waive their rights pursuant to *Lexecon Inc. v. Milberg Weiss Berhad Hynes & Lerach*, 523 U.S. 26 (1998). The potential bellwether pool would be limited to cases filed in the E.D. La where there seems to have been a small market share of Exactech joints. Further, Defendants would undoubtedly move to dismiss other Louisiana plaintiffs on statute of limitations grounds. Defendants' motion in *Billups* states that, "La. Civ. Code Ann. art. 3492 sets forth a one-year prescriptive period for product liability actions. The Fifth Circuit has held that a cause of action under the LPLA accrues when the plaintiff 'suffered some physical injury because of' the product." *Billups v. Exactech, Inc.*, No. 2:22-cv-01410-SSV-MBN, Dkt.14-1, Motion at 6 (citations omitted). If Defendants are correct, this very parsimonious prescription period as alleged by Exactech, could result in very few, if any, cases remaining in the selection pool since many potential plaintiffs would have suffered their knee and hip revisions well more than a year ago, not knowing that it was due to a defective polyethylene that was only recently recalled. Defendants have already demonstrated their rapidity in moving to dismiss under La. Civ. Code Ann. art. 3492.

It would appear more and more Defendants are refusing to waive *Lexecon* rights. For example in the *In re: Xarelto (Rivaroxban) Products Liability Litigation*, the pharmaceutical defendants wrote to Judge Eldon Fallon stating:

> Defendants are aware of the Court's preference that MDL defendants waive their rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), for the bellwether trials so that the MDL judge can try all of the bellwether cases. However, in the context of this case, waiving *Lexecon* would deprive Defendants of the live trial testimony of the most important defense witness on liability. That witness is the plaintiffs' prescribing physician, who in

almost every case is within the subpoena power of the plaintiffs' home district but not within the subpoena power of this Court. The parties to the *Propulsid* litigation, where the defendants did not waive *Lexecon*, benefited from having Louisiana-only plaintiffs in the bellwether pool, allowing plaintiffs' physician to testify live at trial.

**See Exhibit 1 attached hereto.**

Thus, defendants refused to waive *Lexecon* and Judge Fallon was limited to trying cases involving plaintiffs from the Eastern District of Louisiana and selection of later trials which was contingent upon the Fifth Circuit granting Judge Fallon a temporary assignment within the Circuit pursuant to 28 U.S.C 292. *See* Case Management Order No. 2, *In re: Xarelto (Rivaroxban) Products Liability Litigation*, MDL No. 2592.

Similarly, with the *In re: Taxotere Products Liability Litigation,* MDL No. 2740, pending in the Eastern District of Louisiana, those defendants also refused to waive *Lexecon*.  *See* Exhibit 2, Transcript of Proceedings before Judge Engelhardt, March 7, 2017. At defense conferences and on blogs, MDL defense counsel advocate refusal of *Lexecon* waivers.[9]

An appeal before the Fifth Circuit in *In re: DePuy Orthopaedics, Inc.* 870 F.3d 345 (5th Cir. 2017) involving the Pinnacle Hip implant MDL reflects the importance of the *Lexecon* waiver to enable an MDL court to try a sufficient number of cases. The circuit held that a *Lexecon* waiver or objection to an MDL court trying a case where venue was improper had to be clear and unambiguous. This case highlights the benefit of an MDL court having personal jurisdiction over a meaningful portion of the cases without the need for *Lexecon* waiver. Here, if the New York Districts are chosen, especially the E.D.N.Y., the MDL Judge will have ample choices to ensure a sufficient number of trials involving, knees, hips and ankles without the need for a waiver.

---

[9] Another Reason MDL Defendants Should Not Waive Their Lexecon Rights, *available at* https://www.druganddevicelawblog.com/2022/03/another-reason-mdl-defendants-should-not-waive-their-lexecon-rights.html#page=1

Thus, Defendants should go on record unequivocally advising this Panel that they will unconditionally waive *Lexecon* as a prerequisite to consideration of the E.D. La.. Otherwise, the MDL judge loses the ability to have representative cases to try. Notably, in this Exactech litigation, it is evident from the case filings and from the medical literature documenting the hundreds to thousands of Exactech joints implanted at HSS that there will be a robust pool of triable cases where the surgeons can be easily subpoenaed, and defendants and plaintiffs cannot avoid trial. The court will not be at the mercy of either party denying a *Lexecon* waiver.

## IV. THE S.D.N.Y DOES NOT PROMOTE THE EFFICIENT CONDUCT OF THE LITIGATION

The Southern District of New York already has numerous MDLs. Aside from noting the experience this District has with overseeing medical product liability cases, Defendants do not cite to any other reason as to why the S.D.N.Y. is better equipped to handle this MDL as opposed to the E.D.N.Y. Dkt. 42, Response at 13-14. Currently, there are seventeen (17) open MDLs in the S.D.N.Y.[10] Curiously, Defendants proposed Judge Paul A. Engelmayer who was just assigned a new MDL last month and who also presides over *In Re: Aluminum Warehousing Antitrust Litigation.* At the outset of a litigation, judges are typically very busy learning the case, appointing leadership, resolving disputes related to initial case management orders etc. and it makes no sense to assign a Judge two MDL's that so overlap in time and sequence.

In proposing Judge Engelmayer, Defendants notably failed to apprise the Panel that Judge Lorna Schofield also in the S.D.N.Y not only presides over an Exactech knee case filed last year, but that there has also been an exchange of some written discovery in that case. The Panel and the other plaintiffs would not have known that but for the Interested Party Response filed by Plaintiff

---

[10] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-Jul-15-2022.pdf, at 3-4.

Kevin Patterson on July 22. Dkt. 54, Response at 2. The Panel may recall that Judge Schofield presided over the *In re: Farxiga (Dapaglifozin) Products Liability Litigation*, MDL No. 2776. This pharmaceutical product MDL was transferred to her in April 2017 and due to her effective judicial management, following a Science Day, motion practice and mediation, the litigation resolved resulting in termination of the MDL by September 2019.[11] Precious few, if any other pharmaceutical MDLs, have closed within two years of initiation. Thus, if the Panel chose the S.D.N.Y., Judge Schofield would be best suited within the district to preside over the coordination.

### V. IN THE ALTERNATIVE, COORDINATION IN THE E.D. PA IS APPROPRIATE

The Panel should also consider the Eastern District of Pennsylvania as a suitable transferee forum. Since the filing of Plaintiffs' initial Motion, two cases have been assigned to Judge Nitza I. Quiñones Alejandro.[12] As argued by Plaintiffs George Wilson, Valerie Wilson, and Jacob Brickman, the Eastern District of Pennsylvania is geographically central and easily accessible by multiple modes of transportation. Dkt. 41, Response at 4. This District has vast experience handling multiple, complex MDLs and Judge Nitza I. Quiñones Alejandro personally has experience presiding over a products liability case involving injuries a child sustained from her use of over-the-counter Children's Motrin and Tylenol while she was a judge in the Court of Common Pleas of Pennsylvania, First Judicial District, Philadelphia County. *See Maya v. Johnson and Johnson, et al.*, No. 2879, 2013 WL 663158 (Pa.Com.Pl.) (Jan. 7, 2013). The Pennsylvania Superior Court affirmed a verdict in favor of the plaintiffs and the Pennsylvania Supreme Court

---

[11] Moving Plaintiffs' Counsel had the honor serving as co-lead counsel of that MDL.
[12] Judge Quiñones Alejandro currently presides over an Optetrak knee case, *Brickman v. Exactech, Inc. et al.* (2:22-cv-02339) and a GXL Liner hip case, *Camp v. Exactech, Inc. et al.* (2:22-cv-02895).

declined the appeal.[13] While Judge Quiñones Alejandro has not yet presided over an MDL, she is more than qualified to preside over these cases which will involve similar legal theories of liability as to that of the *Maya* case.

Furthermore, Exactech products were widely used amongst surgeons in the Philadelphia and Southern New Jersey area, and it is anticipated that more cases will arise from this jurisdiction, including both hips and knees. As demonstrated by the cases already in suit, Judge Quiñones Alejandro currently presides over an Optetrak knee and GXL Connexion Liner hip case. Further, there are currently four (4) cases pending in the District of New Jersey before three different judges. The District of New Jersey, is proximal and in between Philadelphia and New York City. Thus, the Panel should give consideration to assignment of this MDL to Judge Quiñones Alejandro as she is an experienced and highly competent jurist.

## VI. CONCLUSION

For the reasons stated above and in Plaintiffs' original Motion, and for the reasons set forth by the multiple other plaintiffs, the Eastern District of New York is the most appropriate venue for the formation of this MDL. Because Defendants have agreed that an MDL is appropriate to encompass the knee, hip and ankle Exactech products previously identified, it is requested that this Panel create an MDL and situate it in the Eastern District of New York before the Honorable Kiyo A. Matsumoto, or the two other alternative venues and jurists discussed above.

---

[13] Susan Lasser, *Industry News-Warnings Issues- Drugs-PA. Sup. Ct.: Pennsylvania High Court Refuses to Hear Appeal of $10 Million Children's Motrin® Verdict,* Wolters Kluwer Products Liability law Daily, 2015 WL 1245622, (March 19, 2015).

Dated: July 27, 2022                    Respectfully submitted,

/s/ Ellen Relkin

Ellen Relkin, Esq. ER-9536
Danielle Gold, Esq. DG-2506
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
[email]@weitzlux.com
Tel: 212- 558-5715
Fax: 212-344-5461

*Counsel for Plaintiffs Alexander and Rona Berger, Patricia Bindel, Cynthia Camp and Brian Camp, Emanuel Cervelli, Lawrence Daly, Jeffrey and Diane Fassler, Nue Gega and Trashe Gega, Mark Goldman, Herbert Hahn, Michael Head, Michael and Debbie Insdorf, Leslie and Arcangelo Liberatore, and Dawn Zeevalk and David Zeevalk*